**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

NEW ORLEANS ILA PENSIONERS                    CIVIL ACTION
ASSOCIATION, ET AL.

VERSUS                                        NO. 07-6349

BOARD OF TRUSTEES OF NEW ORLEANS              SECTION "F"
EMPLOYERS INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION AFL-CIO PENSION FUND and
P & O PORTS LOUISIANA, INC.

<u>ORDER AND REASONS</u>

Before the Court are two motions: (1) the motion to
dismiss filed by the Board of Trustees of the New Orleans Employers
International Longshoremen's Association AFL-CIO Pension Fund, and
(2) the motion for a more definite statement or dismissal filed by
P & O Ports Louisiana, Inc. For the following reasons, the Board's
motion is GRANTED and P & O Ports Louisiana's motion is DENIED as
moot.

<u>Background</u>

The New Orleans ILA Pensioners Association (NEOPA) is an
association of retired longshoremen who receive pensions from the
International Longshoremen's Association AFL-CIO Pension Fund (the
Fund). NEOPA and six of its individual members filed this lawsuit
against the Board, alleging that the Board breached its fiduciary
duties under the Employee Retirement Income Security Act, 29 U.S.C.
§§ 1001-1461, by failing to use reasonable care in managing the

1

Fund's assets and monitoring the Fund's actuaries. P & O Ports Louisiana, the Fund's largest contributing employer, is also named as a defendant.

The ILA AFL-CIO Pension Fund is a multi-employer, defined-benefit pension plan that was established in 1957. The Fund's participants are employees who worked under collective bargaining agreements between labor unions and employers in the stevedoring industry in New Orleans and Baton Rouge. Employees with five years of eligible employment are, upon retirement, entitled to a fixed monthly payment for life, calculated based on their number of hours worked and years of service. Employers make annual contributions into a fund that is used to pay for these benefits. The employer contributions are also used to provide vacation and health benefits to employees.

The pool of contributions is managed and allocated by the Fund's ten-member Board, which decides how much employers must contribute each year, how the money is to be allocated, and how it is to be invested. Actuaries assist the Board in making these decisions, by providing estimates regarding the potential impact that different funding and investment decisions will have on the Fund's ability to cover its projected liabilities.

The plaintiffs' complaint asserts that the Board of Trustees mismanaged pension fund assets between October 1, 1999 and the present, causing a loss in excess of $10 million in fund assets.

The defendants do not dispute this loss (it was subject of a previous lawsuit filed by the Board of Trustees against the Fund's former actuaries.)[1] The pensioners intervened in the previous lawsuit but their third-party complaint against the Board was dismissed without prejudice prior to trial, when the pensioners failed to respond to the Board's motion to dismiss.

The plaintiffs' complaint is essentially the same as the third-party complaint they filed as intervenors: They claim that the Board of Trustees breached fiduciary duties under 29 U.S.C. § 1109 by mismanaging fund assets and failing to monitor the actuaries. Liability for breach of duty under ERISA is established in 29 U.S.C. § 1109, which provides that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

Section 1109 can be enforced through ERISA's civil enforcement

---

[1] In that suit, the Board claimed that the actuaries provided negligent and unprofessional services between 1999 and 2004 by, among other things, failing to recommend that fund assets be moved into long-term investment positions once the Fund had become fully funded in 1999. The trustees alleged that the actuaries' negligence contributed to a substantial loss in value of the assets. After a four-day bench trial, judgment was entered in favor of the actuaries and against the Board of Trustees on March 26, 2007.

provisions. <u>See</u> 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1132(a)(3). The plaintiffs' complaint asserts that the defendants are personally liable to the Plan for losses under 29 U.S.C. § 1132(a)(2), and the plaintiffs also seek equitable relief under 29 U.S.C. § 1132(a)(3), including restitution and court-ordered removal of the individual trustees. The Board of Trustees now moves to dismiss the complaint, arguing that the plaintiffs do not have a sufficient stake in the outcome of this lawsuit as to give them standing to sue. The trustees also contend that, in any case, they did not breach their fiduciary duties under ERISA, because plan funding is inherently a not a fiduciary function.

## I.  <u>Standing</u>

As the party invoking federal jurisdiction, the plaintiffs bear the burden of establishing standing. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992). The plaintiffs are participants and beneficiaries of the ILA AFL-CIO Pension Plan, and, therefore, they have statutory standing to sue for fiduciary breach under ERISA's civil enforcement provisions. <u>See</u> 29 U.S.C. §§ 1123(a)(2), 1123(a)(3). But statutory standing is not enough. "It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." <u>Raine v. Byrd</u>, 521 U.S. 811, 820 n. 3 (1997). A plaintiff must establish standing under both ERISA and

4

Article III of the Constitution. To satisfy Article III's standing requirements, a plaintiff must allege facts that show a sufficiently personal stake in the outcome of the litigation to warrant the invocation of federal jurisdiction. <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975) (<u>citing</u> <u>Baker v. Carr</u>, 369 U.S. 186, 204 (1962)). A plaintiff must show: (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. <u>Friends of the Earth, Inc. v. Laidlaw Environmental Servs.</u>, 528 U.S. 167, 180-81 (2000).

The contours of the injury-in-fact inquiry in ERISA cases depend on whether the plaintiff is seeking monetary or injunctive relief. Here, the plaintiffs are seeking both forms of relief, under 29 U.S.C. § 1132(a)(2) and § 1132(a)(3), which provide that:

> (a) Persons empowered to bring a civil action--A civil action may be brought. . .
>> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
>> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . . ." .

5

A.

Under 29 U.S.C. § 1132(a)(2), a plaintiff may only seek remedies that provide a benefit to the plan as a whole, rather than the individual plaintiff. See Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985). However, the mere fact that plan participants are permitted to sue for damages "on behalf of the plan" does not relieve them from establishing the kind of concrete injury that would confer individual standing. See Glanton ex rel. ALCOA Prescription Drug Plan v. Advance PCS Inc., 465 F.3d 1123, 1127 (9th Cir. 2006) ("[Plaintiffs assert that] ERISA plan beneficiaries may bring suits on behalf of the plan in a representative capacity. We have no quarrel with this proposition-- so long as plaintiffs otherwise meet the requirements for Article III standing."); Central States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC, 433 F.3d 181, 200 (2nd Cir. 2005) ("[A]n ERISA Plan participant or beneficiary must plead a direct injury in order to assert claims on behalf of a Plan."); Harley v. Minn. Mining and Mfg. Co., 284 F.3d 901, 906-07 (8th Cir. 2002) (no constitutional standing where the "loss did not cause actual injury to plaintiff's interests in the plan" and determining that the "limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered no injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan").

Alleging loss to the assets of a defined-benefit pension fund is quite different from alleging that a pensioner's income stream will be affected. The Supreme Court has held that a participant in a defined-benefit pension plan has an interest in his fixed future payments only, not the assets of the pension fund. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 439-40 (1999). Based on this aspect of defined-benefit pension plans, courts of appeal that have considered the question of standing in these circumstances have held that participants do not have standing to sue on behalf of the Plan for losses caused by fiduciary breach, unless the participants can establish that the remaining pool of assets will be inadequate to pay for the plan's outstanding liabilities. See Harley v. Minn. Mining and Mfg. Co., 284 F.3d 901, 906-07 (8th Cir. 2002); Loren v. Blue Cross & Blue Shield of Michigan, 505 F.3d 598, 608 (6th Cir. 2007)(allegation by participant that his required payments to health plan "probably" would have been less absent fiduciary wrongdoing was too speculative and hypothetical to confer standing).

The ILA pensioners have not alleged that their entitlement to accrued future benefits has been jeopardized. Given the previous litigation relating to the ILA Pension Fund, this pleading failure is a glaring omission. The pensioners intervened and participated in discovery in the case against the actuaries, and it was clear from proceedings in that litigation that the pensioners would be

7

required to establish Article III standing to maintain their ERISA claims against the trustees.[2]

It is obvious that, in some cases, a fiduciary's wrongdoing could cause a reduction in fund assets that would jeopardize a participant's interest in future payments from a defined-benefit plan. A plaintiff might well be able to establish injury in fact by including well-pleaded allegations that imprudent or disloyal conduct created an appreciable risk that a fund will be unable satisfy existing liabilities. See e.g., Johnson v. Georgia-Pacific Co. Et al., 19 F.3d 1184, 1186 (7th Cir. 1994)(noting that the plaintiff's complaint failed to pursue such a theory). However, absent well-pleaded allegations, the plaintiffs' "injury" is neither pleaded, concrete nor particularized, and it is instead conjectural and hypothetical. Friends of the Earth, Inc., 528 U.S. at 180-81. The plaintiffs do not have standing under Article III to bring the claims for monetary recovery to the Plan under § 1132(a)(2).

---

[2] NEOPA's third-party complaint against the trustees, which was essentially identical to their complaint in this case, was dismissed for failing to respond to a motion to dismiss filed by the Board of Trustees--which advanced exactly the same standing arguments the defendants are raising this time around. In other words, the pensioners have been served with the same motion to dismiss for lack of standing twice, and have yet to articulate a theory as to why they suffered a particularized injury regarding their vested and fixed future pension benefits, and they have not claimed that their current benefits have been reduced.

B.

Although a plaintiff is limited to sue for recovery on behalf of an ERISA plan when asserting a § 1132(a)(2) claim, participants can sue for equitable relief under § 1132(a)(3) for breaches of fiduciary duty that harm them as individuals. Some courts have recognized that a plan participant need not show individualized harm to have Article III standing to obtain injunctive relief under § 1132(a)(3), if the plaintiff is seeking to enforce the ERISA's disclosure requirements, see Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450 (3d Cir. 2003); seeking to restore to the fund a specific pot of ill-gotten gains of a self-dealing fiduciary, see Banyai v. Mazur, 2007 WL 959066 *4 (S.D. N.Y. 2007); or claiming other equitable relief that does not revolve around alleged monetary loss to the plan and exists wholly apart from monetary claims, see Wells v. California Physicians' Service, 2007 WL 926490 *5 (N.D. Cal. 2007) (citing Glanton v. Advance PCS Inc., 465 F.3d 1123, 1124-25 (9th Cir. 2006); Central States, 433 F.3d at 199-200). None of the plaintiffs' claims are of this nature. The complaint includes claims for "restitution" and for a constructive trust to be placed on any money by which the trustees were "unjustly enriched." Other claims are actually claims for compensatory damages styled as injunctive relief. However, monetary relief is not available under § 1132(a)(3). See Mertens v. Hewitt Associates, 508 U.S. 248, 257 (1993); Rogers v. Hartford Life &

9

Accident Ins. Co., 167 F.3d 933, 944 (5th Cir. 1999) (Mertens "firmly closed" the door to recovery of compensatory damages under § 1132(a)(3)); Ochsner Health Plan v. Northern Louisiana Physician, 2002 WL 31844903 (E.D. La. 2002). Finally, the Court has found no support for the position that removing fiduciaries from their positions is the kind of injunctive relief that a plaintiff could seek without making the particularized showing of injury required by Article III. Therefore, the plaintiffs do not have standing to pursue their claims for equitable relief under § 1132(a)(3).

Accordingly, the Board's motion to dismiss the complaint for lack of standing is GRANTED, and the motion to dismiss or for a more definite statement by P & O Ports Louisiana is DENIED as moot.

New Orleans, Louisiana, January 23, 2008.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

10